UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM M. HOBLOCK, candidate for
Albany County Legislator for the 26th District;
LEE R. CARMAN, candidate for Albany
County Legislator for the 29th District,

                             Plaintiffs-Intervenors,

And

PHILIP and PATRICIA SGARLATA;
JOHN and CAROL STEWART; JOHN
and MARY MAYBEE; ELLEN
GRAZIANO; and other voters similarly
situated,

                             Plaintiffs,

      -against-                        1:04-CV-1205
                                          (LEK/DRH)

THE ALBANY COUNTY BOARD OF
ELECTIONS; RICHARD A. GROSS,
candidate for Albany County Legislator for
the 26th District; and GENE MESSERCOLA,
candidate for Albany County Legislator for
the 29th District,

                            Defendants.

---

**MEMORANDUM-DECISION AND ORDER**[1]

**I.  Background**

      The factual background of this matter has been discussed at length in the prior opinions of

both this Court and the Second Circuit Court of Appeals.  See, *inter alia*, Hoblock v. Albany County

Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) (Walker, C.J.); Hoblock v. Albany County Bd. of

---

[1] For printed publication by the Federal Reporters.

1

Elections, 233 F.R.D. 95 (N.D.N.Y. 2005) (Kahn, D.J.); Hoblock v. Albany County Bd. of

Elections, 341 F. Supp. 2d 169 (N.D.N.Y. 2004) (Kahn, D.J.).  Familiarity is therefore presumed.

     Currently before the Court are Plaintiffs' (Plaintiffs-Voters') Motion for summary judgment

(Dkt. No. 38) - which is joined/supported by Plaintiffs-Intervenors (Dkt. No. 50) - and Defendant

Albany County Board of Elections' ("Defendant" or "Board") Motion for summary judgment (Dkt.

No. 43).[2]

     After review of the submissions from the parties and the relevant law, and for the reasons

below, Plaintiffs' Motion for summary judgment is granted and Defendants' Motion for summary

judgment is denied.  The Albany County Board of Elections is directed to count the disputed ballots

and to certify winners in the disputed elections in the 26th and 29th Legislative Districts.

## II.  Discussion

*A.  Standards of Law*

             **1.  Section 1983**

Actions may be brought pursuant to 42 U.S.C. § 1983 against state actors to enforce rights created by federal statutes and the Constitution.... In order to bring a claim under section 1983, a plaintiff must allege that (1) the defendant was acting "under color of state law" at the time the conduct complained of occurred, and (2) that the conduct deprived the plaintiff of "'rights, privileges or immunities secured by the Constitution or laws of the United States.'"

Millar v. Ojima, 354 F. Supp. 2d 220, 226 (E.D.N.Y. 2005) (citing and quoting Maine v. Thiboutot,

448 U.S. 1, 4 (1980); Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus.

---

[2] Issues concerning *res judicata* and estoppel, and the Rooker-Feldman doctrine have already been addressed by this Court or the Second Circuit, and were found not to bar Plaintiffs' action before this Court.  See Hoblock, 422 F.3d 77 (Mandate, Dkt. No. 29, Attach. 2); Hoblock, 341 F. Supp. 2d 169.

Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996); other citations omitted).

Furthermore, when evaluating municipal liability under 42 U.S.C. § 1983,

[t]he Supreme Court does not interpret section 1983 to impose unbridled liability on municipalities: "[T]he language of [section] 1983, read against the background of the [ ] legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."... As subsequently reaffirmed and explained by the Supreme Court, municipalities... may only be held liable when the municipality itself deprives an individual of a constitutional right.  Thus, in order for an individual deprived of a constitutional right to have recourse against a municipality under section 1983, he must show that he was harmed by a municipal "policy" or "custom."

Gibson v. Comm'r of Mental Health, No. 04 Civ. 4350(SAS), 2006 WL 1234971, at *4 (S.D.N.Y.

May 8, 2006) (footnotes omitted; citing and quoting, *inter alia*, Monell v. New York City Dep't of

Soc. Servs., 436 U.S. 658, 691 (1978)).

## 2. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  In applying this standard, courts must "'resolve all ambiguities, and

credit all factual inferences that could rationally be drawn, in favor of the party opposing summary

judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec.

Co., 252 F.3d 205, 216 (2d Cir. 2001)).

Once the moving party meets its initial burden by demonstrating that no material fact exists

for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as

3

to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." <u>Brown</u>, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991); <u>W. World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990).

### *B.  Action Under Color of State Law*

"An individual acts under color of state law when he or she exercises power '"possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."'" <u>Millar</u>, 354 F. Supp. 2d at 226 (citing and quoting <u>Polk County v. Dodson</u>, 454 U.S. 312, 317-18 (1981); other citations omitted). The Albany County Board of Elections - a State entity - operated pursuant to State law in a State election when it issued the absentee ballots to Plaintiffs-Voters. That is not disputed in this case. <u>See</u>, *inter alia*, Plntfs-Voters' Mem. of Law (Dkt. No. 38, Attach. 3) at 2-4; Affid. of O'Connor (Dkt. No. 43, Attach. 2) at ¶¶ 6-7; Affid. of Graziano (Dkt. No. 43, Attach. 4) at ¶¶ 4-6; Affid. of Monescalchi (Dkt. No. 43, Attach. 5) at ¶¶ 4-6; Defts' Rule 7.1(a)(3) Statement (Dkt. No. 43, Attach. 8) at ¶¶ 7-10; Plntfs-Intervens' Letter Brief (Dkt. No. 50) at 1-2; Plntfs-Voters' Mem. of Law in Opp. to Defts' Motion (Dkt. No. 52) at 1-2. Therefore, the Court finds that Defendant Board did act under color of State law in this matter.

But, when it comes to Defendants Gross and Messercola, "[i]n order to prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that an individual *acting under color of state law deprived him of a constitutionally protected right*." <u>Webley v. Hartmann</u>, No. 03-CV-0596

(LEK/DRH), 2005 WL 1520852, at *2 (N.D.N.Y. June 27, 2005) (Magnuson, D.J., *by inter-Circuit assignment*) (emphasis added; citing Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004)).  See also Cohane v. Greiner, No. 04-CV-943S, 2006 WL 625842, at *5 (W.D.N.Y. Mar. 10, 2006).  However, Defendant Candidates Gross and Messercola had no involvement with the issuance of the absentee ballots at issue.  Their only involvement seems to stem from their challenge of absentee ballots, as well.  See Plntfs' Mem. of Law in Support (Dkt. No. 38, Attach. 3) at 4. They did not act under color of state law to deprive Plaintiffs of constitutionally protected rights, and, thus, a Section 1983 claim cannot be maintained against them.  This action is therefore dismissed as against Defendants Gross and Messercola.

### C.  Intentional Deprivation of Rights

Plaintiffs contend that the Defendant Board acted intentionally rather than negligently in issuing the absentee ballots, thereby equating to intentional deprivation of Plaintiffs' constitutional rights.[3]  See Plntfs' Mem. of Law (Dkt. No. 38, Attach. 3).  Indeed, Plaintiffs argue that "the Board intentionally induced the voters to vote by absentee ballot and that the voters' rights have been

---

[3] To the extent that Plaintiffs' allegations embody negligence on the part of Defendants under 42 U.S.C. § 1983, those claims must be dismissed.  "The Supreme Court has flatly denied that negligence is a basis for a cause of action and recovery in § 1983 cases.... 'Where a government official's act causing injury to... life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required.'"  Jeffers v. Goord, No. 9:99 CV 0335 FJS/GHL, 2005 WL 928628, at *10 (N.D.N.Y. Apr. 4, 2005) (Lowe, M.J.) (emphasis in original), *Report-Recommendation Adopted in its Entirety sub nom. by* Jeffers v. Doe, No. 9:99CV335(FJS/GHL), 2005 WL 2240686 (N.D.N.Y. Sept. 13, 2005) (Scullin, C.J.), (citing and quoting Daniel v. Williams, 474 U.S. 327, 328, 330-31, 333 (1986) (Rehnquist, J.)).  See also Iwachiw v. New York State Dep't of Motor Vehicles, 396 F.3d 525, 527, 530 (2d Cir. 2005) (per curiam) (affirming, *inter alia*, District Court's dismissal of "claims against State Defendants, because negligence is not a valid basis for liability under 42 U.S.C. § 1983...."). Thus, negligence claims are not cognizable under 42 U.S.C. § 1983.

impaired by the Board's deliberate and intentional actions."  Plntfs-Voters' Mem. of Law in Opp. to Deft's Mot. (Dkt. No. 52) at 4.  The Court does not believe that the Board had any ulterior or nefarious motive in issuing the absentee ballots to Plaintiffs.  No facts have been presented to suggest that these forty Plaintiffs-Voters were singled-out by the Board and intentionally "trapped" into voting by absentee ballot so that those votes could be discarded.  Further, the Board's actions in this matter were not negligent, and the deprivation in this case stems directly from the intentional issuance of the absentee ballots by the Board.  The orders not to count the ballots came from the State courts.  See, e.g., June 2004 State Court Decision (Dkt. No. 43, Attach. 3).  The State appellate courts affirmed the trial court's order.  See Defts' 7.1(a)(3) Statement (Dkt. No. 43, Attach. 8) at ¶¶ 16-18.  It is true that prior to those orders, the Board was prepared to count said ballots.  See, inter alia, id. at ¶¶ 11-12, 15.  However, it was the Board's interpretation of Judge Mordue's Order, dated February 2004 (Dkt. No. 38, Attach. 2, Ex. A), and the subsequent intentional issuance of the absentee ballots for the special general election, that led directly to the State Court orders not to count said ballots.  No one disputes that the Board intentionally, albeit under a mistaken procedure, issued the absentee ballots in question.  See Defts' 7.1(a)(3) Statement (Dkt. No. 43, Attach. 8) at ¶¶ 9-10; Plntf's Mat. & Undisp. Facts (Dkt. No. 54, Attach. 2) at ¶¶ 22-24, 30.  The Court rejects Defendants argument that the action of the Board did not proximately cause Plaintiffs' injuries, and rejects the argument that the intervening State Court orders defeat said proximate cause.  See Defts' Mem. of Law in Resp. to Plntfs. (Dkt. No. 49) at 4-8.

Pursuant to the Second Circuit's decision in Shannon v. Jacobowitz, 394 F.3d 90 (2d Cir. 2005), this Court must evaluate several factors prior to rendering a decision in this matter.  This Court must first conclude that "the due process clause [of the Federal Constitution] is implicated by

intentional state action." <u>Id.</u> at 97.  If the Court finds the Due Process Clause to be implicated, we

"may consider the adequacy and fairness of the state remedy...." <u>Id.</u>

    After review and consideration, this Court hereby finds that the Due Process Clause of the

Fourteenth Amendment to the United States Constitution is implicated by the State action in this

matter, and that the State remedy is both unfair and inadequate for the protection of Plaintiffs' said

constitutional rights - Plaintiffs' ballots are not being counted, a decision that this Court finds

violates Plaintiffs' constitutional rights under 42 U.S.C. § 1983 and the Fourteenth Amendment.[4]

---

    [4] Defendants argue that Plaintiffs had an available State remedy that they did not make use of - namely *quo warranto*, under New York Executive Law § 63-b.  <u>See</u> Defts' Mem. of Law in Support (Dkt. No. 43, Attach. 9) at 12.  However, this Court finds that *quo warranto* was not an applicable remedy in this action, and the Court distinguishes the rule, as discussed in <u>Delgado v. Sunderland</u>, 97 N.Y.2d 420 (2002), as it was distinguished in <u>Shannon v. Jacobowitz</u>, 301 F. Supp. 2d 249, 255-256 (N.D.N.Y. 2003) (Hurd, D.J.) (indirectly not affirmed on other grounds - District Court failed to first find intentional State action before analyzing fairness and adequacy of State remedy).  Generally, among other things, the remedy of *quo warranto* does not lie in actions where the facts are not in dispute.  <u>See</u> <u>Lenc v. Zicha</u>, 227 N.Y.S. 704, 706-707 (1st Dep't 1928) (citing, *inter alia*, <u>People ex rel. Kelly v. Common Council of City of Brooklyn</u>, 32 Sickels 503, 77 N.Y. 503 (1879)); <u>Smith v. Dillon</u>, 44 N.Y.S.2d 719, 723 (3d Dep't 1943) (citing, *inter alia*, <u>Lenc</u> and <u>People ex rel. Kelly</u>).  In this matter, the main facts are not in dispute.  "First, it is unnecessary to conduct an investigation," since there is no dispute as to the incorrect issuance of the contested absentee ballots, and the fact that the votes are not being counted.  <u>Shannon</u>, 301 F. Supp. 2d at 255-256.  "Second, it is woefully unclear how a discretionary, after-the-fact state court action permits an aggrieved candidate and voters whose votes have not been counted to assert their rights."  <u>Id.</u>  And, "[f]inally, there is no danger of a vacancy necessitating the challenged winner to take office", id., since Candidate Messercola is still listed as the Legislator in the 29th District, and William Melchionni is listed at this time, at least according to some sources, as Legislator in the 26th District.  <u>See</u> http://www.albanycounty.com/departments/legislature/legislator.asp?id=165 (last visited May 21, 2006) (although the 26th District's Legislator is listed as "TBA" in certain locations, William P. Melchionni III is listed as the 26th District's Legislator in other locations on the website).  Plaintiffs-Intervenors have informed the Court that the disputed offices are being held by the incumbents, pending the outcome of this action.  <u>See</u> Plntfs-Intervens' Letter Brief (Dkt. No. 50) at 1.  Indeed, the remedy is also unfair, in that, *inter alia*, *quo warranto* is a procedure that vests discretion in the Attorney General of the State, not the candidates or voters who are aggrieved; and, furthermore, in this case the voters may be governed by a candidate who, under *quo warranto*, is sworn into office, but who did not win the election.  <u>See</u> <u>Shannon</u>, 301 F. Supp. 2d at 256-257.

The intentional issuance of the absentee ballots was an action under color of state law which itself directly led to the deprivation of Plaintiffs' constitutionally protected franchise.  As this Court has previously stated, "[a] major issue in this case is the constitutional right of the voters to not only cast votes, but to have those votes counted.  *The constitutional right of the former goes along directly with the latter*."  Hoblock, 233 F.R.D. at 99 (emphasis added; citing Hoblock, 341 F. Supp. 2d at 176 (remanded on different grounds); United States v. Mosley, 238 U.S. 383, 386 (1915) (Holmes, J.); Gold v. Feinberg, 101 F.3d 796, 802 (2d Cir. 1996)).

Furthermore, the Supreme Court of the United States has specifically spoken on this issue, finding, as this Court has previously noted, that "it is 'as equally unquestionable that the right to have one's vote counted is as open to protection... as the right to put a ballot in a box.'"  Mosely, 238 U.S. at 386.  And, indeed, the Supreme Court further clarified in United States v. Classic, 313 U.S. 299 (1941), that "'[o]bviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted'".  Id. at 315.  More than just the act of voting, or the "initial allocation of the franchise", is protected by the Constitution, see Bush v. Gore, 531 U.S. 98, 104 (2000), the counting of said vote is also guarded. See also, generally, Herbert Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 HARV. L. REV. 1, 28-29 (1959) (mentioning United States v. Classic - which was argued for the Government by Professor Wechsler, of Columbia University - and the constitutionally secured right to vote); Jessica L. Post, Note, *Uniform Voting Machines Protect the Principle of "One-Person, One-Vote"*, 47 ARIZ. L. REV. 551, 560 & n.91 (2005) (addressing voting machines, minority voters, and the Equal Protection Clause, but noting a conclusion that "the 'right' to vote includes the right to go to the polls, the right to be free of coercion while voting, and *the right to have one's ballot*

*counted equally* in his or her State.") (emphasis added).

The First Circuit held in <u>Griffin v. Burns</u>, 570 F.2d 1065 (1st Cir. 1978) - which has been cited with approval by both the Second Circuit and this Court, and which is very similar to the case at bar - that "[w]hen a group of voters are handed ballots by election officials that, unsuspected by all, are invalid, [and then] state law... forbid[s] counting the ballots," the election officials violate the constitutional rights of the voters, and the election process is flawed. <u>Id.</u> at 1076. As this Court has previously held in this very matter - and still believes to be true:

> [the Plaintiffs-Voters] reasonably relied upon the actions of the Board's election experts in sending them absentee ballots for the special general election. The good faith of the voters in submitting the absentee ballots is undisputed. *It would be absurd to make it the responsibility of the voters to reject the ballot sent by the Board because of the Board's error in interpreting the District Court's order, and then to demand an application for a new absentee ballot.*

<u>Hoblock</u>, 341 F. Supp. 2d at 177 (emphasis added). <u>See also</u> Decl. of Philip Sgarlata (Dkt. No. 38, Attach. 2, Ex. C) at ¶ 5 ("I had no indication that the Board of Elections improperly issued the ballots."); Decl. of Patricia Sgarlata (Dkt. No. 38, Attach. 2, Ex. C) at ¶ 5 (same). Indeed, as Plaintiffs argue, it would be unreasonable to expect the voters to have returned the ballots to the Board and "[told] the Board that it misread both the Election Law and a Federal court order." <u>See</u> Plntfs' Mem. of Law in Support (Dkt. No. 38, Attach. 3) at 15. Considering the foregoing, the State Court orders and the position of the Defendant Board provide Plaintiffs with no relief or protection in this matter, and are both unfair and inadequate to protect the voters' rights. As in <u>Griffin</u>, no one challenged the process of the distribution or voting of the contested ballots until after the votes were cast and about to be counted. <u>See</u> Plntfs' Mem. of Law in Support (Dkt. No. 38, Attach. 3) at 3 ("The voters had no indication that the Board improperly issued the ballots. In fact, no person or

9

party objected to the Board of Elections' bipartisan decision [to issue the ballots].").  Furthermore, the ballots were distributed by the State election experts - the Board - and pursuant to law.  To deny the counting of these contested ballots would be a true denial of suffrage to these Plaintiffs.[5]  See Griffin, 570 F.2d at 1075-1076.

This Court finds that Plaintiffs in this case were induced to vote by absentee ballot when the Board intentionally, and acting under color of state law, issued the absentee ballots - since the Plaintiffs would have otherwise either re-applied for absentee ballots according to the procedures set forth in the law (which Plaintiffs believed had already been accomplished when they received their ballots), or Plaintiffs would have made an attempt to vote in person.  See Plntfs' Resp. in Opp. to Defts' Motion (Dkt. No. 52) at 4-5 (with citations); Decl. of Philip Sgarlata (Dkt. No. 38, Attach. 2, Ex. C) at ¶¶ 5-6; Decl. of Patricia Sgarlata (Dkt. No. 38, Attach. 2, Ex. C) at ¶¶ 5-6.  Indeed, the Court notes, as Plaintiffs argue, that Plaintiffs-Voters, when submitting their absentee ballots, were required to sign - under penalty of perjury - the following affirmation, which re-affirms what Plaintiffs would have, in any event, declared on any new application for said absentee ballots:

> "I do declare that I am a citizen of the United States, that I am duly registered in the election district shown on the reverse side of this envelope and I am qualified to vote in such district; that I will be unable to appear personally on the day of the election for which this ballot is voted at the polling place of the election district in which I am a qualified voter... I hereby declare that the foregoing is a true statement to the best of my knowledge and belief, and I understand that if I make any material false statement in the foregoing statement of absentee voter, I shall be guilty of a misdemeanor" (Election Law § 7-122[8]).

Amended Complaint (Dkt. No. 27) at ¶ 33.  Thus, in the end, Plaintiffs were eligible voters whose

---

[5] Indeed, in this case, as in Griffin, this Court is "not asked to examine the validity of individual ballots or to supervise the administrative details of a local election.  [We are] asked to remedy a broad-gauged unfairness that infected the results of a local election...."  Griffin, 570 F.2d at 1078.  Thus, this Court will not be timid in addressing the required relief.  See id.

votes are now, by action and order of the State, being discarded without being counted.

Therefore, this Court finds that it would make for an empty constitutional right if one's franchise extended only so far as placing one's ballot in the ballot box.  If that were the case, the situation of a ballot box subsequently "falling off of a truck" would be of no constitutional moment. That is an unacceptable result.

The Court finds Plaintiffs, as joined by Plaintiffs-Intervenors, have met their burden.  There was intentional action taken by Defendant Board, under color of state law, and the State "remedy" is unfair and inadequate for the protection of Plaintiffs-Voters' constitutional rights, such that Plaintiffs' only relief is to be found in this Court.  Thus, Plaintiffs' Motion for summary judgment, as joined by Plaintiffs-Intervenors, is granted, and Defendants' Motion for summary judgment is denied.  The Board shall count the disputed ballots, and certify winners.

Plaintiffs are also awarded one dollar ($1.00) in nominal damages as the prevailing party in this civil rights action.  See, generally, LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 431 (2d Cir. 1995) ("A plaintiff who has proven a civil rights violation but has not proven actual compensable injury, is entitled to an award of nominal damages.") (citing, inter alia, Cabrera v. Jakabovitz, 24 F.3d 372, 391 (2d Cir. 1994); Gibeau v. Nellis, 18 F.3d 107, 110-11 (2d Cir. 1994) ("'an award of nominal damages is not discretionary where a substantive constitutional right has been violated'")).

### D.  Costs and Attorney's Fees

Generally, in the United States parties bear their own costs of litigation.  However, in 1976, Congress changed this rule and practice, and made an award of attorney's fees available in civil rights cases pursuant to 42 U.S.C. § 1988.  See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

"The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances.... Accordingly, a prevailing plaintiff '"should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."'" Id. (citations omitted). "The amount of the fee, of course, must be determined on the facts of each case." Id. Furthermore, "[a]ll the plaintiff must do to qualify as a prevailing party is to 'obtain an enforceable judgment against the defendant from whom fees are sought.'... '[A] judgment--declaratory or otherwise–"will constitute relief, for purposes of § 1988, if and only if, it affects the behavior of the defendant toward the plaintiff."'" Marriott v. County of Montgomery, No. 5:03 CV 531, 2006 WL 951125, at *8 (N.D.N.Y. Apr. 12, 2006) (Hurd, D.J.) (citing, inter alia, Farrar v. Hobby, 506 U.S. 103, 110-111 (1992)).

Early in the development of calculating attorney's fees due a prevailing party, the Supreme Court, citing to the Report of the House of Representatives, which itself referred to the case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), discussed factors that were once to be considered by courts, to wit:

> [t]he twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.... These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106.

Hensley, 461 U.S. at 430 (citing Johnson, 488 F.2d at 717-719). Hensley also included consideration of a version of the "lodestar" method, discussed below.

Hensley has since been clarified and augmented by more recent decisions on the issue of

12

attorney's fees, including <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478

U.S. 546 (1986) (analogizing case at bar to § 1988 cases), and <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789

(2002) (generally discussing <u>Hensley</u> and "lodestar" method, but otherwise addressing fees under

somewhat different heading of § 406(b) and social security recovery).  For instance, using the

<u>Johnson</u> factors alone presented problems in attorney's fees calculations, and allowed for more

disparate results.  <u>See</u> <u>Citizens' Council</u>, 478 U.S. at 562-563.  Thus, now a court should establish,

to begin with, a "lodestar" or the number of hours reasonably spent by counsel in the litigation

multiplied by a reasonable hourly rate, and then determine if an adjustment is warranted.  <u>See</u>

<u>Farbotko v. Clinton County of New York</u>, 433 F.3d 204, 208 (2d Cir. 2005) (citing <u>Citizens'</u>

<u>Council</u> and <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)).  Furthermore, the lodestar figure above

became, for awhile, generally only the first step.

> Second, using the lodestar figure as a starting point, the court could then make adjustments
> to this figure, in light of "(1) the contingent nature of the case, reflecting the likelihood that
> hours were invested and expenses incurred without assurance of compensation; and (2) the
> quality of the work performed as evidenced by the work observed, the complexity of the
> issues and the recovery obtained."... This formulation emphasized the amount of time
> expended by the attorneys, and provided a more analytical framework for lower courts to
> follow than the unguided "factors" approach provided by *Johnson*.

<u>Citizens' Council</u>, 478 U.S. at 563 (citing and quoting, *inter alia*, <u>Merola v. Atl. Richfield Co.</u>, 515

F.2d 165, 168 (3d Cir. 1975)).  In addition, the Supreme Court has since limited consideration of the

<u>Johnson</u> factors, removing several (such as "special skill and experience of counsel" and "quality of

representation") from the mix.  <u>See</u> <u>Citizens' Council</u>, 478 U.S. at 564-565 (citing, *inter alia*, <u>Blum</u>,

465 U.S. at 897-901).  Upward adjustment of the lodestar is permitted, but in limited circumstances.

<u>See</u> <u>id.</u>

The current form of the lodestar method is the dominant method of calculation in federal

13

courts today, and appears to envelope many of the <u>Hensley</u> and <u>Johnson</u> factors at the outset.  <u>See</u> <u>Citizens' Council</u>, 478 U.S. at 564-565 (citation omitted); <u>Gisbrecht</u>, 535 U.S. at 801-802.  It is also hoped, however, that the parties will settle on the amount of the fees owed.  <u>See</u> <u>Gisbrecht</u>, 535 U.S. at 801-802 (citing <u>Hensley</u>, 461 U.S. at 437).

The Court acknowledges the award of one dollar ($1.00) in nominal damages, and further acknowledges that Plaintiffs are the prevailing party in this action - meaning that Plaintiffs have met the first requirement for an award of attorney's fees.  <u>See, generally,</u> <u>Hensley</u>, 461 U.S. at 433 ("A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'... This is a generous formulation that brings the plaintiff only across the statutory threshold.  It remains for the district court to determine what fee is 'reasonable.'") (citation omitted); <u>McGrath v. Toys "R" Us, Inc.</u>, 3 N.Y.3d 421 (2004) ("Under the comparable federal civil rights statutes authorizing fee awards, federal courts employ a two-step process for determining whether a discretionary attorney's fee award is appropriate.... First, in order to be eligible to apply for an award, plaintiff must be a 'prevailing party' in the litigation.  If this threshold requirement is met, the court must then determine what constitutes a reasonable award, a discretionary inquiry that takes into account a multitude of factors, although 'the most critical factor is the degree of success obtained.'") (citing and quoting <u>Hensley</u>, 461 U.S. at 433, 436).

But, this Court is not prepared to award costs or attorney's fees at this time, considering the lack of information as to the relevant factors that will inform this Court's decision as to a calculation of, *inter alia*, the lodestar amount and reasonable fees.  <u>See</u> <u>Farbotko</u>, 433 F.3d 204.  Therefore, if Plaintiffs wish to seek an award of costs and attorney's fees, Plaintiffs shall submit a motion and

14

briefing on the issue within thirty (30) days of the filing date of this Memorandum-Decision and Order.  At this time, Plaintiffs' request for costs and attorney's fees is denied without prejudice.

### III.  Conclusion

Therefore, based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiffs' Motion for summary judgment (Dkt. No. 38) - amended and corrected by Dkt. No. 41 - which is joined/supported by Plaintiffs-Intervenors (Dkt. No. 50), is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 43) is **DENIED**; and it is further

**ORDERED**, that Defendants Gross and Messercola are **DISMISSED** from this action; and it is further

**ORDERED**, that the **disputed ballots SHALL BE COUNTED**, and the Albany County Board of Elections **SHALL CERTIFY WINNERS** in the disputed elections; and it is further

**ORDERED**, that Plaintiffs are awarded **ONE DOLLAR ($1.00) IN NOMINAL DAMAGES**; and it is further

**ORDERED**, that Plaintiffs request for costs and attorney's fees, pursuant to 28 U.S.C. § 1988, is **DENIED WITHOUT PREJUDICE**.  If Plaintiffs wish to seek an award of costs and attorney's fees, Plaintiffs shall submit a motion and briefing on the issue within **THIRTY (30) DAYS** of the filing date of this Memorandum-Decision and Order; and it is further

15

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:      May 24, 2006
            Albany, New York

_____
            Lawrence E. Kahn
            U.S. District Judge